IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

JANUARY 2019 TERM

**FILED**

**February 7, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 16-0437

_____

STATE OF WEST VIRGINIA,
Respondent

V.

MICHAEL S. SITES,
Petitioner

_____

Appeal from the Circuit Court of Grant County
Honorable Lynn Nelson, Judge
Criminal Action No. 15-F-19

AFFIRMED

_____

Submitted:  January 29, 2019
Filed:  February 7, 2019

Nicholas T. James, Esq.                          Patrick Morrisey, Esq.
Daniel R. James, Esq.                            Attorney General
The James Law Firm                               Thomas T. Lampman, Esq.
Keyser, West Virginia                            Assistant Attorney General
Attorneys for Petitioner                         Gordon L. Mowen, II, Esq.
                                                 Assistant Attorney General
                                                 Attorneys for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

1.      "'To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.' Syllabus point 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996)." Syllabus point 10, *State v. Shrewsbury*, 213 W. Va. 327, 582 S.E.2d 774 (2003).

2.      "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402

of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence.  If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted.  A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syllabus point 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516, (1994).

3.	"The decision to grant a motion for severance pursuant to W. Va. R. Crim. P. 14(a) is a matter within the sound discretion of the trial court." Syllabus point 3, in part, *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1988).

4.	"In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings." Syllabus point 7, in part, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

5.     Under Rule 43(a) of the West Virginia Rules of Criminal Procedure, a defendant has a right to be present with counsel and provided with an opportunity to be heard, prior to a trial court responding to a jury question during its deliberations. This right may be waived and a violation is subject to harmless error analysis.

6.     "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

**Hutchison, Justice:**

This appeal was brought by Michael S. Sites (hereinafter "Petitioner") from the April 11, 2016, order of the Circuit Court of Grant County sentencing him for his convictions of first-degree murder, holding a hostage to defile, and two counts of possession of a controlled substance with intent to deliver.[1]  In this appeal Petitioner has assigned error as follows: admission of toxicology evidence, admission of Rule 404(b) evidence, joinder of Count II with other offenses, failure to sever offenses occurring on different dates, improperly responding to jury questions, admission of previously excluded evidence, and insufficient evidence to support two convictions.  Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The relevant facts of this case began on September 12, 2013.  On that day, Petitioner drove from his home in Grant County, West Virginia, to a pharmacy in Winchester, Virginia, to pick up his prescription drugs Alprazolam (also called Xanax) and

---

[1] Petitioner was sentenced to life with mercy on the murder conviction, three to ten years imprisonment on the hostage conviction, and two to six years imprisonment on each of the drug convictions.  The sentences were ordered to be served consecutively.  A third drug charge was dismissed.

1

Oxycodone (also called Percocet).[2] Petitioner was accompanied by his adult daughter, Jordan Kivett, and an adult family relative named Lexus Cantwell.[3] After obtaining the pills, and while still in the pharmacy parking lot, Petitioner, Ms. Kivett and Ms. Cantwell crushed some of the pills and snorted them up their noses. Later that evening a party was held at Petitioner's home in Grant County. Petitioner gave his prescription pills freely to all the females at the party, including Ms. Cantwell. The men were required to pay for the pills.

At some point during the evening, Ms. Cantwell became incapacitated from taking the prescription pills and drinking alcohol. After a few of the guests did not see Ms. Cantwell in the house, they asked Petitioner where she was. Petitioner stated that Ms. Cantwell "passed out in the closet, so [he] put her in the bed." One of the guests, Joey Snyder, demanded to see Ms. Cantwell.[4] Petitioner unlocked his bedroom door briefly and Mr. Snyder was able to see Ms. Cantwell lying on a bed with her pants off.

---

[2] It appears that Petitioner had a previous back injury and "had been getting prescription drugs for years" to treat his back pain.

[3] Ms. Kivett and Ms. Cantwell were cousins. It appears that Ms. Kivett and Ms. Cantwell were temporarily living at Petitioner's home. Ms. Cantwell had recently broken up with her boyfriend and went to live with Ms. Kivett to help recover from the breakup.

[4] Mr. Snyder and Ms. Cantwell were cousins.

It appears that during the course of the next four days Ms. Cantwell stayed at Petitioner's home. Ms. Kivett, who had been staying at Petitioner's home, stayed at the home of her boyfriend during this four-day period. However, Ms. Kivett maintained daily contact with Ms. Cantwell during this time. Ms. Kivett had the impression that Ms. Cantwell "acted like she almost wasn't allowed to [leave Petitioner's home]." On September 16, 2013, Ms. Kivett went to Petitioner's home to do some laundry. She repeatedly knocked on Petitioner's bedroom door, which was locked, but got no answer. After being in the home for several hours, Ms. Kivett began knocking on Petitioner's bedroom door again. Petitioner finally responded and said that he would be out. After Petitioner came out of his bedroom, Ms. Kivett saw Ms. Cantwell lying on his bed with vomit coming out of her mouth and blood coming out of her nose and ears; she was dead. Ms. Kivett told Petitioner to call 911, but he decided to drive Ms. Cantwell's body to a hospital.

Petitioner dropped off Ms. Cantwell's body at Grant Memorial Hospital. He informed a nurse that Ms. Cantwell was a friend of his daughter and that he believed her name was Lexi. Petitioner left the hospital without telling the nurse his name. After Petitioner left the hospital, he saw Ms. Kivett riding with her boyfriend and flagged them down. During a brief discussion with Ms. Kivett on the roadside, Petitioner attempted to get her to agree that he was at work when she found Ms. Cantwell's body. Ms. Kivett informed Petitioner that she was going to tell the truth. A few days later Petitioner tried to

3

suggest to Ms. Kivett that Ms. Cantwell committed suicide. Several days after this incident Petitioner told Ms. Kivett that "he was afraid that it was his fault, that he may have gave [Ms. Cantwell] too many pills." A pathologist determined that Ms. Cantwell "died of intoxication by the combined effects of the oxycodone and the alprazolam."

Subsequent to a police investigation, a grand jury returned a five count indictment against Petitioner on March 3, 2015. The indictment charged him with one count of first-degree murder by supplying Ms. Cantwell with lethal amounts of Oxycodone and Alprazolam; one count of holding Ms. Cantwell hostage with the intent to defile; two counts of possession with the intent to deliver the controlled substance Alprazolam; and one count of possession with the intent to deliver the controlled substance Oxycodone. The prosecutor presented the case under a felony-murder theory, with the Oxycodone charge as the underlying felony.[5]

The case was tried before a jury starting on February 17, 2016, and concluded on February 19, 2016.[6] The prosecutor presented testimony from nineteen witnesses.

---

[5] *See* Syl. pt. 7, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978) ("The crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies.").

[6] The case was originally presided over by the Honorable Judge Phil Jordan. Judge Jordan retired on December 31, 2015, and was succeeded by the Honorable Judge Lynn Nelson.

4

Petitioner did not testify and did not call any witnesses. The jury submitted seven questions to the trial court during its deliberations. The trial court responded to each of the questions. The jury ultimately returned a verdict convicting Petitioner of first-degree murder, holding hostage to defile, and two counts of possession with the intent to deliver the controlled substance Alprazolam.[7] Following the denial of post-trial motions the Petitioner filed this appeal. While the appeal was pending the parties filed a joint motion asking this Court to stay the appeal,[8] and permit them to supplement the record on the issue of the trial judge responding to seven jury questions.[9] By order entered January 25, 2017, this Court granted the motion and remanded the case "for the limited purpose of establishing the record on issues related to the assignment of error of whether petitioner's rights were violated when the circuit court answered a series of questions for the jury outside the presence of petitioner or his counsel."[10]

---

[7] The underlying felony-murder charge, delivery of Oxycodone, was dismissed. *See* Syl. pt. 8, *State v. Williams*, 172 W. Va. 295, 305 S.E.2d 251 (1983) ("Double jeopardy prohibits an accused charged with felony-murder, as defined by W. Va. Code § 61–2–1 (1977 Replacement Vol.), from being separately tried or punished for both murder and the underlying enumerated felony.").

[8] At the time of the motion, the State had not filed a response brief to the appeal.

[9] The jury questions and responses are presented in the Discussion section of the opinion.

[10] This Court agreed to remand the issue for further development because the trial judge did not go on the record when he responded to five of the seven questions.

On remand, a hearing was conducted before a new judge, the Honorable H. Charles Carl, III. A total of eight witnesses testified on remand regarding the issue, including Petitioner, his trial counsel[11] and the presiding trial judge.[12] Petitioner testified that he was present when the trial court responded to the first two jury questions, but that his trial counsel was not present. Petitioner also testified that he was not present when the trial judge responded to the last five jury questions. Petitioner's trial counsel testified that he was only present for one of the questions (possibly the sixth question) submitted by the jury. Trial counsel also disputed a claim that the trial judge contacted him by cell phone regarding the first two jury questions. The trial judge testified that Petitioner was not present when he responded to the last five jury questions, but that Petitioner's trial counsel was present for all of the questions except the first jury question.[13] The trial judge also stated that he called trial counsel on his cell phone and consulted with him regarding the first jury question.[14] The official court reporter testified that the court reporting equipment was running in the courtroom during the jury deliberations. The court reporter indicated that the recording equipment only picked up trial counsel's voice once, and that was around

_____

[11] Two attorneys represented the Petitioner during the trial: John G. Ours and J. Stuart Bowers, II. Mr. Bowers had to leave the trial, prior to the jury questions, because of a family medical emergency. For the purpose of the jury question issues in this case, all references to Petitioner's trial counsel means Mr. Ours only.

[12] The other witnesses were court personnel who attended the trial.

[13] The trial judge was somewhat equivocal and stated that trial counsel may have been "present or conferred with on the second one."

[14] Trial counsel was allegedly at a McDonald's restaurant.

6

the time when the sixth jury question was sent into the courtroom. The court reporter also testified that she distinctly remembered that trial counsel was not present for the first question, because "[w]e contacted him at McDonald's and waited." The trial judge's law clerk testified that the trial judge called Petitioner's trial counsel to inform him of the first jury question. The law clerk also testified that trial counsel was present for the last five jury questions. The bailiff for the trial judge testified that trial counsel was present for all of the jury questions. Two other witnesses at the hearing testified that they had no recollection of the events surrounding the jury questions.[15]

---

[15] During the remand hearing, Petitioner learned for the first time that the trial judge went to the jury room with the bailiff and asked the jury if they wanted to recess for the evening. We will not address this issue as an assignment of error because it was not adequately briefed as such. *See* Syl. pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."). However, we will point out that the manner in which the trial judge handled the matter was not consistent with this Court's guidelines. *See* Syl. pt. 3, *State v. Keaton*, 215 W. Va. 376, 599 S.E.2d 799 (2004) ("The best practices to be followed when a trial judge addresses or converses with a juror or the jury in a criminal proceeding are as follows, unless special circumstances—that should be fully spread upon the record—dictate otherwise: (1) the judge should address or converse with jurors on the record and in the presence of the defendant and his or her counsel unless the defendant personally and affirmatively waives the right to be present; (2) when a trial judge addresses or converses with one or more jurors and the defendant and his or her counsel are not present, the defendant and his or her counsel should be furnished with a prompt oral summary by the trial court and a subsequent transcript of the address or conversation; (3) after the substance or transcript of the address or conversation are made known to the defendant and his or her counsel, any alleged error in or problem with the address or conversation should be promptly presented to the trial court in an appropriate motion—although failure to do so does not per se preclude raising any alleged error or problem in the address or conversation on appeal.").

7

Subsequent to the remand hearing, the Petitioner filed a supplemental brief addressing the jury question issues. The State then filed its brief, which addressed the jury question issues.

## II.

## STANDARD OF REVIEW

This case comes to this Court after the trial court denied Petitioner's post-trial motions for judgment of acquittal and new trial. We have held that "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976). It has also been noted that "a trial judge should rarely grant a new trial. . . . Indeed, a new trial should not be granted unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *McInarnay v. Hall*, 241 W. Va. 93, 818 S.E.2d 919, 924 (2018) (internal quotation marks and citation omitted). This Court applies the following general standard when reviewing a circuit court decision denying a motion for a new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying

8

factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Further, we have held that:

> The trial court's disposition of a motion for judgment of acquittal is subject to our de novo review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). Additional review standards will be used for specific issues. Accordingly, we proceed to consider the parties' arguments.

## III.
## DISCUSSION
### A.
### Admission of Toxicology Evidence

During the trial the State introduced the results of toxicology tests that were performed on Ms. Cantwell's blood. This evidence was introduced through Dr. James Kraner, the Chief Toxicologist of the Medical Examiner's Office. Dr. Kraner testified that Ms. Cantwell's blood had a level of the drugs Alprazolam and Oxycodone "that could cause fatal respiratory depression." In this appeal, the Petitioner contends that his Sixth Amendment right to confrontation was violated because Dr. Kraner did not perform the

9

toxicology testing. The State argues that Petitioner failed to object to Dr. Kraner's testimony or his toxicology report on this ground during the trial, and therefore any alleged Sixth Amendment violation was waived.

The Sixth Amendment confrontation right that the Petitioner contends was violated is set out in Syllabus point 6 of *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006) as follows:

> Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

The decision in *Mechling* defined a testimonial statement as "a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Syl. pt. 8, *Mechling*, in part.

Assuming that the toxicology evidence in this case constitutes a statement under *Mechling*, the record supports the State's contention that Petitioner failed to object to the evidence on Sixth Amendment grounds.[16] We have recognized that "[o]ne of the

---

[16]In our review of the testimony of Dr. Kraner it appears that defense counsel made a general objection to the introduction of his toxicology report, not his

most familiar procedural rubrics in the administration of justice is the rule that the failure

of a litigant to assert a right in the trial court likely will result in the imposition of a

procedural bar to an appeal of that issue." *State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d

114, 128 (1995) (internal quotation marks omitted).  That is, "'[t]o preserve an issue for

appellate review, a party must articulate it with such sufficient distinctiveness to alert a

circuit court to the nature of the claimed defect.'  Syl. pt. 2, *State ex rel. Cooper v.*

*Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996)."  Syl. pt. 10, *State v. Shrewsbury*, 213

W. Va. 327, 582 S.E.2d 774 (2003).  This principle is designed to prevent "a party from

making a tactical decision to refrain from objecting and, subsequently, should the case turn

---

testimony, but never stated any specific ground for the objection.  We have addressed the issue of a general objection as follows:

> A general objection overruled is of small value to the objector on appeal.... The rationale of this rule is that the proponent of the evidence should be given an opportunity to meet the objection by reframing the question, laying the necessary foundation, or by other means.  A general objection does not offer him this opportunity.  Thus, the objector in most instances will lose his rights on appeal by failing to take further action after his general objection has been overruled.

*State v. McFarland*, 175 W. Va. 205, 220, 332 S.E.2d 217, 232 (1985), superseded by Court rule as recognized in *State v. Joseph*, 214 W. Va. 525, 590 S.E.2d 718 (2003) (citation omitted).  *See* 1 Louis J. Palmer, Jr., et al., *Handbook on Evidence for West Virginia Lawyers*, § 103.03[3][b], at 71 (6th Ed. 2015) ("Rule 103(a)(1) provides that protests to the admission of evidence are to be specific, 'unless it was apparent from the context.'  For this reason a general objection under the rules is not preferred and may be insufficient, when overruled, to preserve the error for appeal.").

sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)." *LaRock*, 196 W. Va. at 316, 470 S.E.2d at 635. Petitioner's failure to raise a Confrontation Clause objection at trial precludes this Court from addressing the matter in this appeal. *See State v. Shingleton*, 237 W. Va. 669, 684, 790 S.E.2d 505, 520 (2016), abrogated by statute on other grounds ("The petitioner did not assert a Confrontation Clause objection to L.C.'s testimony during trial. Consequently, he has waived the right to raise the issue on appeal."); *State v. Reed*, 223 W. Va. 312, 321–22, 674 S.E.2d 18, 27–28 (2009) ("Assuming that *Crawford* is applicable to the facts of this case, we find that Mr. Reed waived the right to raise the issue in this appeal.").[17]

---

[17] Petitioner has asked this Court to review the issue under the plain error rule. *See State v. Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995) ("The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made."). We decline to do so. *See State v. Henson*, 239 W. Va. 898, 908 n.16, 806 S.E.2d 822, 832 n.16 (2017) ("We also decline to invoke the plain error doctrine regarding this alleged error[.]"); *State v. Fleming*, 237 W. Va. 44, 55, 784 S.E.2d 743, 754 (2016) ("we decline to invoke the plain error rule on this issue."); *State v. Rogers*, 231 W. Va. 205, 216, 744 S.E.2d 315, 326 (2013) ("we decline to invoke the plain error doctrine regarding alleged misstatement of law made by the prosecutor."). We will note in passing that federal courts have indicated that the United States Supreme Court has not expressly ruled that a *Crawford* violation occurs in the context of a supervising official, like Dr. Kraner, testifying about test results done by a subordinate. *See Bullcoming v. New Mexico*, 564 U.S. 647, 672, 131 S. Ct. 2705, 2722, 180 L. Ed. 2d 610 (2011) (Sotomayor, J., concurring in part) (observing that the Supreme has not addressed the situation "in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue."); *Black v. United States*, 2017 WL 405933, at *3 (E.D. Mich. Jan. 31, 2017) ("courts have recognized that it remains an open question whether someone in Dr. Nieberding's position may testify as to a test conducted by a subordinate employee under his supervision.").

**B.**

**Admission of Rule 404(b) Evidence**

The Petitioner next contends that the trial court committed error in admitting certain evidence under Rule 404(b) of the West Virginia Rules of Evidence, in violation of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). Specifically, Petitioner argues that the trial court improperly permitted four witnesses to present testimony showing that he previously gave controlled substances to women and engaged in sexual conduct with them. The State contends that this evidence was admissible to show Petitioner's common plan or scheme in giving women controlled substances in order to render them incapable of resisting his sexual advances.

We have held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to a review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). "Our function . . . is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion." *McGinnis*, 193 W. Va. at 159, 455 S.E.2d at 528.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, the rule goes on to provide that

13

"[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The procedure for admitting evidence under Rule 404(b) was outlined in Syllabus point 2 of *McGinnis* as follows:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

The record shows that the trial court held a *McGinnis* hearing at which the State presented evidence from eight witnesses that it intended to call at trial, to testify to prior acts of Petitioner providing controlled substances to woman for the purpose of engaging in sexual conduct with them. The trial court ultimately ruled that only four of the witnesses would be allowed to testify, because testimony by the remaining four

14

witnesses would be cumulative. The court also held that the testimony would be admissible for all of the charges, except the hostage charge.[18] Ultimately the court gave a limiting instruction on the evidence when each witness's testimony was given at trial and during its charge to the jury.

In this appeal, the Petitioner argues several reasons as to why the trial court erred in admitting the Rule 404(b) evidence. First, the Petitioner contends that the testimony of the witnesses at the *McGinnis* hearing did not show by a preponderance of the evidence that he engaged in sexual acts with the witnesses or that they were under the influence of drugs "where they could not resist." We disagree. The Petitioner's daughter, Ms. Kivett, testified at the *McGinnis* hearing that she saw Petitioner give drugs to women, and that on different occasions she saw women naked his home. Ms. Kivett also testified that Petitioner tried to seduce her several times while she was under the influence of drugs. Another witness named Nicole Cain, testified that she stayed with Petitioner for about a month and that he supplied her with drugs. Ms. Cain stated that she left Petitioner's home after he made sexual advances toward her when she was blacked out from drugs. A third

---

[18] The trial court prohibited the evidence from being introduced on the hostage charge, because the State failed to provide timely notice to the Petitioner that the evidence would be used for that offense as well. *See* Rule 404(b)(2) ("Any party seeking the admission of evidence pursuant to this subsection must: (A) provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and (B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.").

15

witness, Devon Harlow, testified that Petitioner gave her drugs and that she slept in his bed. The fourth witness, Corey Teeter, testified regarding Petitioner giving drugs to his former girlfriend and performing oral sex on her. In light of the sworn testimony of the witnesses, we find that the trial court properly found by a preponderance of the evidence that the conduct each witness described actually occurred and that the Petitioner committed the acts.

The Petitioner also contends that the Rule 404(b) evidence was not admissible because it lacked relevancy. Under Rule 402 of the West Virginia Rules of Evidence it is expressly provided that "[i]rrelevant evidence is not admissible." It has been recognized that "evidence is relevant so long as it has any tendency, however slight, to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 1 Palmer, et al., *Handbook on Evidence*, § 401.03[1], at 260. *See* W. Va. R. Evid. Rule 401. According to Petitioner the Rule 404(b) evidence would only be relevant if he were charged with sexual assault in the second degree, because that offense occurs when a person engages in sexual conduct with another person who is physically helpless. *See* W. Va. Code § 61-8B-4(a)(2) (1991). We disagree with the Petitioner's narrow interpretation of the type of evidence that may be used to show a common plan or scheme.

16

It has been recognized that "a common plan or scheme may be established by evidence that the defendant committed markedly similar acts of misconduct against similar victims under similar circumstances." *State v. DeVincentis*, 112 Wash. App. 152, 157, 47 P.3d 606, 608–09 (2002) (internal quotation marks and citation omitted). *See United States v. Ramey*, 791 F.2d 317, 323 (4th Cir.1986) ("[O]ther identical instances of [conduct] to that charged in the indictment, occurring reasonably current with the activity charged in the indictment and connected with the very illegal activity which was the subject matter of the indictment, is admissible under the rubric of intent, plan, scheme or design."). In the instant case the Petitioner was charged with three counts of delivery of a controlled substance, and one count of first degree murder by supplying Ms. Cantwell with lethal amounts of controlled substances. The testimony of the Rule 404(b) witnesses was relevant to these offenses and the State's theory that the Petitioner had a common plan or scheme of supplying controlled substances to women in order to seduce them. *See State v. Lough*, 125 Wash. 2d 847, 863–64, 889 P.2d 487, 496 (1995) ("Because the Defendant drugged his victims, rendering them unconscious or unable to clearly remember everything that happened, the evidence of many prior similar episodes to prove a plan was necessary and probative of the facts of the charged crime."); *People v. Carroll*, No. 327707, 2011 WL 2423918, at *1 (Mich. Ct. App. June 16, 2011) ("Without using the words 'scheme, plan, or system,' the court did in fact indicate that the testimony was pertinent to show that defendant had a system whereby he tried to obtain sex from women after providing them with alcohol or drugs.").

17

The Petitioner further argues that even if the Rule 404(b) evidence was relevant, it should have been excluded as highly prejudicial under Rule 403 of the West Virginia Rules of Evidence. It has been recognized that under Rule 403 "a court has discretion to exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice." 1 Palmer, et al., *Handbook on Evidence*, § 403.05[2], at 295. It has been said that unfair prejudice is evidence that has "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650, 136 L. Ed. 2d 574 (1997) (internal quotation marks and citation omitted). Petitioner contends that "prejudice occurred as a result of the thirty year age difference between the Petitioner and the young women he allegedly engaged in sexual acts with." Additionally, Petitioner argues that prejudice occurred from some of the witnesses testifying that he used and sold drugs other than his prescription medication. Assuming that the facts Petitioner argues prejudiced him, we do not find that the admission of the Rule 404(b) evidence was unfairly prejudicial. *See State v. Corey*, 233 W. Va. 297, 307, 758 S.E.2d 117, 127 (2014) ("Although the evidence of the knives was prejudicial, such evidence was not unfairly prejudicial."); *State v. Blevins*, 231 W.Va. 135, 744 S.E.2d 245, 260 n. 10 (2013) ("In weighing the probative value and the danger of unfair prejudice, it is imperative to note that the purpose of Rule 403 is not to exclude all evidence that results in prejudice to a defendant. It is the danger of unfair prejudice to which a reviewing court must be attuned."). "Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case;

18

rather, the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value." 1 Palmer, et al., *Handbook on Evidence*, § 403.05[2], at 297. *See United States v. Pitrone*, 115 F.3d 1, 8 (1st Cir.1997) ("Virtually all evidence is prejudicial--if the truth be told, that is almost always why the proponent seeks to introduce it--but it is only unfair prejudice against which the law protects."); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'"). We simply do find that any prejudice caused by the Rule 404(b) evidence substantially outweighed the probative value of that evidence.[19]

## C.

### Joinder of Count II with other Offenses

The Petitioner contends that the trial court committed error in denying his motion to sever the hostage count from the remaining charges, after ruling that the Rule

---

[19] We summarily reject Petitioner's poorly drafted purported alternative argument that the trial court "erred by admitting too much 404(b) evidence." Petitioner appears to argue that the trial court improperly allowed evidence from, and about, a previously excluded witness; and admitted previously excluded text messages by Ms. Kivett (this is actually another separate assignment of error). According to the Petitioner this evidence, combined with the Rule 404(b) evidence, constituted too much Rule 404(b) evidence and was cumulative. We find no merit to this argument. *See* 1 Palmer, et al., *Handbook on Evidence*, § 403.05[7], at 306 ("The mere fact that evidence is cumulative is not a basis for exclusion under Rule 403, rather, a trial court is only authorized to exclude the 'needless presentation' of cumulative evidence.").

404(b) evidence was not admissible as to the hostage charge. The State argues that the trial court did not abuse its discretion in denying the motion.

We have held that "[t]he decision to grant a motion for severance pursuant to W. Va. R. Crim. P. 14(a) is a matter within the sound discretion of the trial court." Syl. pt. 3, in part, *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1988). The standard for severing charges is set out under Rule 14(a) of the West Virginia Rules of Criminal Procedure, in part, as follows:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of the counts or provide whatever other relief justice requires.

The record shows that the trial court ruled that the Rule 404(b) evidence, regarding Petitioner's use of controlled substances to seduce women, was not admissible with respect to the hostage charge. The State points out that the trial court provided a limiting instruction each time a witness gave Rule 404(b) testimony, and that the court included an instruction in its charge. Petitioner argues, without any citation to authorities, "[t]here is no conceivable way the jury completely disregarded the large amount of 404(b) evidence when it deliberated Count II."[20] Petitioner's failure to include any legal authority

---

[20] *See* 1 Palmer, et al., *Handbook on Evidence*, § 105.03, at 148 ("Rule 105 relies upon the presumption that jurors will follow instructions to consider evidence for one purpose, but not another. Significantly, appellate courts are unwilling to assume that jurors will ignore limiting instructions."); *United States v. Snype*, 441

in support of his argument is in direct contradiction to this Court's appellate rules and administrative order. Specifically, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on. . . .

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, it provides that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Insofar as this assignment of error is inadequately briefed and fails to comply with the administrative order and our appellate rules, this Court will not address this assignment of error. *See State v. Back*, __ W. Va. ___, 820 S.E.2d 916, 920 n.4 (2018) ("In his appellate brief, Mr. Back fails to cite to a single authority on this issue. Accordingly, we decline to address this inadequately briefed issue."); *State v. Shelby* S., No. 14-0456, 2016 WL 2978567, at *5 (W. Va. May 23, 2016) (Memorandum Decision) ("Here, petitioner's additional alleged errors are woefully inadequate as he fails to comply with the administrative order and the West Virginia Rules of Appellate Procedure. Thus, we decline to address petitioner's additional alleged errors[.]").

---

F.3d 119, 129 (2d Cir. 2006) ("the law recognizes a strong presumption that juries follow limiting instructions."); *United States v. Francisco*, 35 F.3d 116, 119 (4th Cir. 1994) ("We generally follow the presumption that the jury obeyed the limiting instructions of the district court.").

**D.**

**Failure to Sever Offenses Occurring on Different Dates**

The Petitioner argues that the first-degree murder charge should have been severed from the other charges because the homicide occurred on a different date. The State contends that this assignment of error was not preserved for appellate review, because the Petitioner failed to request severance on this issue. Petitioner has asked this Court to invoke plain error to review the issue.[21] We decline to review the issue under the plain error rule. In Syllabus point 7 of *LaRock*, we held, in part, the following:

> In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

*See State v. Henson*, 239 W. Va. 898, 908 n.16, 806 S.E.2d 822, 832 n.16 (2017) ("We also decline to invoke the plain error doctrine regarding this alleged error[.]"). The alleged severance error assigned by Petitioner does not meet the high standard for invoking the plain error rule.

---

[21] We wish to point out that Petitioner's brief on this issue is quite disingenuous. Rather than making it clear from the outset that this issue was not raised below, the brief presents three and a half pages of law explaining why the trial court committed error in not severing the charges, before the brief mentions in passing that we can only review the issue under plain error. We caution attorneys that they have a duty of candor in writing briefs and should not allow overzealousness to obfuscate that duty.

**Improperly Responding to Jury Questions**

The Petitioner argues next that the trial court committed reversible error in responding to jury questions in his absence and the absence of his counsel. The State argues that the trial court properly responded to the seven jury questions and that no reversible error occurred. Alternatively, the State contends that the Petitioner waived his right to be present or that his absence was harmless error.

The general right of a criminal defendant to be present during courtroom proceedings is addressed through the interpretation of the state constitution, a Court rule and statute. Consequently, our review of the issue raised in this case is plenary. *See Richmond v. Levin*, 219 W. Va. 512, 515, 637 S.E.2d 610, 613 (2006) ("interpretations of the West Virginia Constitution, along with interpretations of statutes and rules, are primarily questions of law, we apply a de novo review.") (internal quotation marks and citation omitted). This Court has previously recognized the constitutional right of a defendant to be present at critical stages of a criminal proceeding. This right was set out in Syllabus point 6 of *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977) as follows:

> The defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless.

*See Sisler v. Hawkins*, 158 W. Va. 1034, 1039–40, 217 S.E.2d 60, 64 (1975) ("[The] due process of law under the Federal Constitution requires that a defendant be accorded the right to be present in person or by counsel at every stage of his trial."). A criminal defendant's right to be present during courtroom proceedings is also addressed in Rule 43(a) of the West Virginia Rules of Criminal Procedure. Rule 43(a) provides the following:

> The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

*See State v. Barker*, 176 W. Va. 553, 556, 346 S.E.2d 344, 347 (1986) ("The right of an accused to be present at every stage of a criminal trial is also protected by W. Va. R. Crim. P. 43."). Finally, the statutory right of a criminal defendant to be present during criminal proceedings is set out under W.Va. Code § 62-3-2 (1923). This statute provides in part that "[a] person indicted for felony shall be personally present during the trial therefor."[22] This Court set out the effect of this statute in Syllabus point 3 of *State v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975) as follows:

> W.Va. Code 1931, 62-3-2 requires that one accused of a felony shall be present at every stage of the trial during which his interest may be affected; and if anything is done at trial in the accused's

---

[22] The statute, which predates Rule 43(a), is not inconsistent with that rule; therefore, we may look to the statute and decisions interpreting it for guidance. See Syl. pt. 5, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999) ("The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect.").

absence which may have affected him by possibly prejudicing him, reversible error occurs.

This Court has made clear that the "[t]he right to be present is not a right to be present at every moment, but a right to be present at all 'critical stages' in a criminal proceeding." *State v. Shabazz*, 206 W. Va. 555, 557, 526 S.E.2d 521, 523 (1999). We have held generally, that "[a] critical stage of a criminal proceeding is where the defendant's right to a fair trial will be affected." Syl. pt. 2, *State v. Tiller*, 168 W. Va. 522, 285 S.E.2d 371 (1981). *See* Syl. pt. 8, in part, *Blair* ("If an accused demonstrates that . . . . he was absent during a critical stage of the trial proceeding, his conviction of a felony will be reversed where a possibility of prejudice appears from the abrogation of the constitutional or statutory right.").

In the instant case, the issue of the trial court's response to the seven jury questions may be disposed of on non-constitutional grounds under Rule 43(a). *See* Syl. pt. 5, *In re Tax Assessments Against Pocahontas Land Corp.*, 158 W. Va. 229, 210 S.E.2d 641 (1974) ("When it is not necessary in the decision of a case to determine a constitutional question, this Court will not consider or determine such question."). In *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996) this Court summarily acknowledged that Rule 43(a) required a defendant be present when a trial court responds to a jury question. The defendant in *Crabtree* was convicted of recidivism, malicious wounding and battery. One of the issues raised on appeal involved the trial judge's communication with the jury

25

outside the presence of the defendant.  The opinion found in conclusory fashion that the defendant had a right under Rule 43(a) to be present when the trial judge responded to the jury questions.  However, the opinion found that the defendant agreed to have the trial court respond to jury questions outside his presence.  In rejecting this assignment of error, the opinion addressed the matter as follows:

> Rule 43(a) requires trial courts to disclose communications with jurors and provide the defendant with an opportunity to be heard prior to responding to the communications. *Rogers v. United States*, 422 U.S. 35, 39, 95 S. Ct. 2091, 2095, 45 L.Ed.2d 1, 6 (1975).  At the time the trial court informed the parties of the communication and advised them of his plan to communicate with the jury alone, the defendant failed to raise an objection, but specifically said he had no objection to the procedure.  Nevertheless the defendant now insists the error should be corrected under our plain error doctrine.  Our consideration of this issue is controlled by *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).  Under *Miller*, plain error is only available to correct error if the error was not waived.  Thus, we must first determine whether the error was waived or forfeited.
>
> ****
>
> Any reasonable application of *Miller* clearly shows that we are dealing with a waiver.  The defendant voluntarily relinquished any right he had regarding his presence at the time the trial judge communicated with the jury.  The defendant affirmatively approved the trial judge's request that he be permitted to engage in discussions with the jury without the defendant being present.  We believe this is a perfect case of waiver[.]

*Crabtree*, 198 W. Va. at 630-631, 482 S.E.2d at 615-616.  *See State v. Cornelius B.*, No. 15-0109, 2016 WL 597753, at \*7 (W. Va. Feb. 12, 2016) (Memorandum Decision) ("We agree with petitioner's assertion that he had a right to be present during the process by

26

which the circuit court developed written answers to the jury's . . . questions given that it was a critical stage of his proceeding where his right to a fair trial could have been affected.").

The decision in *Crabtree* cited to the United States Supreme Court decision in *Rogers v. United States*, in making a summary determination that Rule 43(a) required the presence of a defendant when a trial court responds to a jury question. *Crabtree* cited to *Rogers* because that decision applied federal Rule 43(a), which our rule is patterned after,[23] to the issue of a federal trial court responding to a jury question.[24]

The defendant in *Rogers* was prosecuted for threatening the life of the President of the United States. During deliberation, the jury sent out a note asking the trial judge if the court would accept a verdict of guilty with mercy. Without notifying the defendant or his counsel, the court instructed the marshal to advise the jury that the court's

---

[23] We frequently look to federal decisions for guidance when we are construing a rule of this Court that is patterned after a federal rule. *See State v. Hedrick*, 204 W. Va. 547, 554, 514 S.E.2d 397, 404 (1999) ("Consequently, because the relevant provisions of W. Va. R. Crim. P. 46 are substantially the same as Rule 46 of the Federal Rules, we look to the federal courts for guidance.").

[24]Federal Rule 43(a) is drafted as follows:

Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at:

(1) the initial appearance, the initial arraignment, and the plea;

(2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing.

27

answer was in the affirmative. After the jury convicted the defendant, the Supreme Court granted certiorari. The Supreme Court found that the communication with the jury violated Rule 43 and that the violation was reversible error:

> Federal Rule Crim. Proc. 43 guarantees to a defendant in a criminal trial the right to be present 'at every stage of the trial including the impaneling of the jury and the return of the verdict.' Cases interpreting the Rule make it clear, if our decisions prior to the promulgation of the Rule left any doubt, that the jury's message should have been answered in open court and that petitioner's counsel should have been given an opportunity to be heard before the trial judge responded.

> Although a violation of Rule 43 may in some circumstances be harmless error, the nature of the information conveyed to the jury, in addition to the manner in which it was conveyed, does not permit that conclusion in this case. The trial judge should not have confined his response to the jury's inquiry to an indication of willingness to accept a verdict with a recommendation of 'extreme mercy.' At the very least, the court should have reminded the jury that the recommendation would not be binding in any way. In addition, the response should have included the admonition that the jury had no sentencing function and should reach its verdict without regard to what sentence might be imposed.

*Rogers*, 422 U.S. at 39–40, 95 S. Ct. at 2095 (citations omitted). *See United States v. Anwar*, 428 F.3d 1102, 1114 (8th Cir. 2005) ("Under the guarantees of Rule 43(a), jury questions should be answered in open court, and defense counsel should be given an opportunity to be heard before the court responds."); *United States v. Pressley*, 100 F.3d 57, 59 (7th Cir.1996) ("Failure to secure the defendant's presence during communications between the judge and the jury violates Rule 43(a)[.]"); *United States v. Rhodes*, 32 F.3d 867, 873 (4th Cir. 1994) ("*Rogers* holds that Rule 43(a) is violated when the defendant is

not present during the formulation of an answer to a jury question such as the one made in this case.").

In view of the reasoning of *Rogers* and *Crabtree* we now hold that under Rule 43(a) of the West Virginia Rules of Criminal Procedure, a defendant has a right to be present with counsel and provided with an opportunity to be heard, prior to a trial court responding to a jury question during its deliberations. This right may be waived and a violation is subject to harmless error analysis.

Turning to the facts of this case, there is no dispute that Petitioner was present when the trial court responded to the first two questions submitted by the jury. However, Petitioner and his counsel testified that trial counsel was not present when the first two jury questions were submitted. During the hearing on remand the trial judge testified that Petitioner's trial counsel was not present for the first question, but that he was not sure if he was present for the second question. The State contends that Petitioner's trial counsel was present for the first and second jury questions.[25] The record from the official trial transcript suggests Petitioner's trial counsel was not present when the first two jury questions were submitted. The following is contained in the official trial transcript:

> (At 1:20 p.m., the jury sent out a note to the Judge, and the following proceedings took place at the bench within the presence of the Defendant, Prosecutor, and the Court:)

---

[25] This assertion is based upon testimony by the bailiff.

29

THE COURT: There's been a question. Petitioner, I need you to come up here, sir, since your attorney's not here. I received a question from the jury, okay in writing.

***

(At 1:24 p.m., the jury sent out a question to the Judge, and the following proceedings took place in the presence of the Defendant, Prosecutor, and the Court:)

THE COURT: (reading note)

The official trial transcript would appear to support Petitioner's contention that his trial counsel was not present when the first two questions were submitted. There is no evidence showing that Petitioner waived his right to have counsel present when the first two questions were asked. During the remand hearing Petitioner testified that he did not know that he could object to having the questions responded to without his counsel present.[26] In

---

[26] Petitioner was asked about trial counsel's absence when the first two jury questions were submitted:

Q. Okay. Did—there has been some questions that the State has asked of whether or not you objected to Mr. Ours not being present. Did you ever object and say, hey, you know, I—I want to wait until Mr. Ours is here, or did you even know you could object? I mean—

A. I didn't even know I could object.

Q. How far did you go in school?

A. To the seventh grade.

Q. Can you read and write?

A. No, sir.

Q. Okay. So if the Judge were to show you a jury instruction, you wouldn't be able to say—tell what it says?

A. No, sir.

30

view of the totality of the circumstances, we find the evidence establishes that trial counsel was not present when the first two jury questions were submitted. Consequently, Petitioner's rights under Rule 43(a) were violated when the trial court responded to the first two jury questions without his counsel present.

The parties do not dispute that Petitioner was not present when the trial court responded to the last five questions submitted by the jury. The State relies on the trial judge's testimony that Petitioner's counsel was present for the last five jury questions. However, trial counsel testified that he was present for only one question and he believes that was the sixth question. We need not resolve the issue of trial counsel's presence for the last five jury questions, because it is undisputed that the Petitioner was not present for any of those questions.[27] Therefore, Petitioner's rights under Rule 43(a) were violated because of his absence when the trial court responded to the last five jury questions. *See Barker*, 176 W. Va. at 556, 346 S.E.2d at 347 ("We believe, in the case now before us, that

---

Q. You can't read or write at all?

A. No, sir.

Q. Okay. Did you ever bring that to the attention of the trial judge, Judge Nelson?

A. Yes, sir.

Q. Okay. So Judge Nelson knew that you couldn't read and write?

A. Yeah.

[27] Even if we assumed that Petitioner's counsel was present for the remaining questions, there is nothing in the record to show that defense counsel waived the right of the Petitioner to be present.

the conduct of the trial judge in communicating with the jury, in the absence of the appellant and his counsel, was improper."); *State v. Smith*, 156 W. Va. 385, 390, 193 S.E.2d 550, 554 (1972) ("The record in this case discloses that the jurors sent a note to the court, signed by all twelve jurors, stating they could not agree on a verdict but were advised by a note from the court to continue their deliberations. The passing of writings or notes between the court and jury is not proper. Upon receipt of the note, the court should have called the jury back into the court room and there, in the presence of the defendant, given its further instructions.").

Under our holding in this case, the State may show that Petitioner "knowingly and intelligently waived his right to be present." *State v. Brown*, 210 W. Va. 14, 22, 552 S.E.2d 390, 398 (2001). *See State v. Hamilton*, 184 W. Va. 722, 726, 403 S.E.2d 739, 743 (1991) ("Waiver of a defendant's fundamental and constitutional right to be present at every stage of the proceedings against him may be accomplished. It must be achieved, however, by the defendant himself in the form of a knowing and intelligent waiver."). The State has argued that Petitioner waived his right to be present when the jury submitted the last five questions. To support this contention, the State points to testimony by the trial judge indicating that either the sheriff or trial counsel informed him that Petitioner asked if he could remain in the holding cell while the jury deliberated. However, the Petitioner testified on remand that after the first two jury questions were submitted, he

was involuntarily taken to a holding cell and given lunch while the jury deliberated. He testified to the issue as follows:

> Q. So your testimony is you only recall being here for two questions?
>
> A. That's correct.
>
> Q. Okay. Did you ever ask to come back into the courtroom?
>
> A. No. I didn't know I could. They just took me over there.
>
> Q. Did you request to go into the holding facility?
>
> A. No.
>
> Q. Well, who made the decision to take you over to the holding facility?
>
> A. They—I guess they took me over to eat lunch. Deputy Thorne come over and asked me what I wanted from McDonald's.

Assuming, without resolving the matter, that Petitioner asked to be taken to a holding cell while the jury deliberated, this evidence standing alone does not show a waiver of the right to be present if the jury submitted questions to the court. We have held that "waiver must be knowingly and intelligently made and the fact that it was so made must be conclusively demonstrated on the record." *State v. Hicks*, 198 W. Va. 656, 663, 482 S.E.2d 641, 648 (1996). The record in this case simply does not conclusively demonstrate that Petitioner knowingly and intelligently waived his right to be present, if the jury submitted questions while deliberating. *See State v. Eden*, 163 W. Va. 370, 378, 256 S.E.2d 868, 873 (1979) ("The record here discloses no evidence that indicates the petitioner's knowing and intelligent waiver of his right to be present at trial."). On this

33

record, we must reject the State's contention that Petitioner waived his right to be present when the last five jury questions were submitted.

The State also argues that any violation of Petitioner's rights was harmless error because the responses to the jury questions did not prejudice him. We have held that

> the standard of review in determining whether an error is harmless depends on whether the error was constitutional or nonconstitutional. . . . As to error not involving the erroneous admission of evidence, we have held that nonconstitutional error is harmless when it is highly probable the error did not contribute to the judgment.

*Guthrie*, 194 W. Va. at 684, 461 S.E.2d at 190. *See United States v. Pressley*, 100 F.3d 57, 59-60 (7th Cir. 1996) ("However, error under Rule 43(a) may be harmless, not mandating reversal and a new trial. . . . Accordingly, when a defendant's rights under Rule 43(a) are violated, the defendant is entitled to a new trial only if the violation is likely to have affected the jury's verdict."). The questions asked by the jury and the trial court's responses are as follows:

> Question 1: What is the difference in Count III and Count IV?
>
> Answer: Count III—Possession of Xanax with intent to deliver to Lexi. Count IV—Possession of Xanax with the intent to deliver to Danielle Fann.[28]

---

[28] The original Count IV of the indictment, delivery of Oxycodone, was dismissed because it was the underlying offense for the felony-murder charge. In an effort not to confuse the jury during deliberation, the original Count V (delivery of Xanax) was renamed Count IV. Danielle Fann was at the party at Petitioner's home on September 12.

Question 2: Are we allowed to have access to the account listing that Mr. Ours showed on the overhead projector?

Answer: No—you have received all you will.

Question 3: Was she detained on a certain date on Count II?

Answer: The ___ day of September 2013.

Question 4: Does this pertain to Lexi?

Answer: Yes.

Question 5. We realize we cannot have the phone but can we have the print out of the text messages Exhibit #8?

Answer: (The trial judge testified at the hearing that he sent the exhibit to the jury.)

Question 6: Legal definition of detain?

Answer: To detain as the possession of personality. To arrest, to check, to delay, to hinder, to hold or keep in custody, to retard, to restrain from proceeding, to stay, to stop.

Question 7: Legal definition of beyond a reasonable doubt?

Answer: A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.

In our review of the questions and responses, we do not find that the trial court's responses were prejudicial to Petitioner. *See State v. Murray*, No. 12-1535, 2013 WL 6231790 (W. Va. Dec. 2, 2013) (Memorandum Decision) (finding no prejudice in trial court's response to three jury questions without the defendant being present—although counsel was present). The Petitioner specifically argues that the answer to Question 3 was

35

prejudicial. In Question 3 the jury asked the trial court if the victim was "detained on a certain date on Count II?"[29] Petitioner contends that the trial court's response, indicating when the detention occurred, could have been read to suggest that the victim was in fact detained. This argument is undercut by Question 6 from the jury. In Question 6 the jury specifically asked for the definition of detain. It is not reasonable to believe that the jury interpreted the trial judge's response to Question 3 as meaning the Petitioner detained the victim, in light of the fact that Question 6 asked for the definition of detain. The logical inference from Question 6 is that the jury had not resolved the issue of whether the victim was detained. In sum, we find no reversible error in the manner in which the trial judge responded to the seven jury questions.[30]

---

[29] Question 3 is to be read in conjunction with Question 4, because Question 4 identifies the person referenced to in Question 3.

[30] Petitioner also argued in his brief that he was prejudiced by Question 5 because he does not know how the response was conveyed to the jury. This issue has no merit. The trial judge testified at the hearing that the requested exhibit was sent to the jury. During oral argument the Petitioner asserted for the first time that the response to Question 1 was incorrect, because the indictment did not specifically name the person receiving the controlled substances in Count III and Count IV. We reject this argument. The response was correct based upon the evidence presented at trial, which showed that Ms. Cantwell and Danielle Fann were provided Xanax at the party on September 12.

## F.

## Admission of Previously Excluded Evidence

Prior to trial the initial trial judge, Judge Jordan, held a *McGinnis* hearing regarding a Rule 404(b) motion filed by the State to introduce text messages between Petitioner and his daughter, Ms. Kivett. The text messages involved drug activity and communication concerning the death of Ms. Cantwell. Judge Jordan found that the State failed to satisfy *McGinnis* because it did not use a witness with personal knowledge of the text messages.[31] After Judge Jordan was replaced by Judge Nelson, the State filed another Rule 404(b) motion seeking to revisit the issue of admitting the text messages. The State argued that it had located Ms. Kivett and that it would introduce the text messages through her testimony. Judge Nelson ruled, without holding a hearing that the text messages constituted intrinsic evidence and could be introduced through Ms. Kivett.[32] Petitioner contends that Judge Nelson erred in overruling Judge Jordan for two reasons:[33] (1) the

---

[31] The State called two investigating officers to present the text messages at the hearing.

[32] Our cases have "consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b)." *State v. Harris*, 230 W.Va. 717, 722, 742 S.E.2d 133, 138 (2013). *See State v. Spinks*, 239 W. Va. 588, 605, 803 S.E.2d 558, 575 (2017); *State v. Bowling*, 232 W. Va. 529, 547, 753 S.E.2d 27, 45 (2013); *LaRock*, 196 W. Va. at 312 n.29, 470 S.E.2d at 631 n.29.

[33] As a successor judge, Judge Nelson was empowered to take any action that Judge Jordan was authorized to take. *See* Syl. pt. 7, in part, *Coleman v. Sopher*, 201 W.Va. 588, 499 S.E.2d 592 (1997) ("Generally, when a successor judge is properly assigned ..., such successor judge steps into the shoes of his or her predecessor and, when the transcript of the proceedings is sufficient, may take any action that such predecessor may properly have taken, either upon proper motion or *sua sponte*.").

State's motion was filed after the scheduling order deadline and (2) because no new evidence was presented.

Petitioner's brief has failed to present any legal authority to support this assignment of error. We have made clear that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" *State, Dep't of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (internal quotation marks and citations omitted). We decline to address this inadequately briefed issue on the merits. *See State v. Lambert*, 236 W. Va. 80, 100, 777 S.E.2d 649, 669 (2015) ("As a result of Mr. Lambert's failure to adequately brief this issue, we will not consider the matter."); *State v. Trail*, 236 W. Va. 167, 179 n.15, 778 S.E.2d 616, 628 n.15 (2015) ("Ms. Trail additionally asserts, without supporting argument or citation to legal authority, that the circuit court's admission of the challenged photographs violated her due process and equal protection rights. Because this issue was not developed, we find the issue was not adequately briefed and we deem the matter waived.").

**Insufficient Evidence to Support Two Convictions**

The last issue raised by Petitioner is that the evidence was insufficient as to Counts I and V.[34] The State contends that the evidence was sufficient to find Petitioner guilty beyond reasonable doubt on both counts.

The standard that guides our review of a claim of insufficiency of the evidence is set out in Syllabus points 1 and 3 of *State v. Guthrie*:

> 1. The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
>
> 3. A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could

---

[34] Petitioner contended that the evidence was insufficient for all of the charges, but he only briefed the sufficiency of evidence for Counts I and V. "Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *LaRock*, 196 W.Va. at 302, 470 S.E.2d at 621. We find that the Petitioner has waived the issue of the sufficiency of the evidence for the other counts by failing to brief those charges.

find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

The Petitioner contends that the State failed to prove Count I, first-degree murder, beyond a reasonable doubt. The jury found Petitioner guilty of first-degree murder under a felony-murder theory. The underlying felony was the delivery of the controlled substance Oxycodone to Ms. Cantwell. This drug was determined to have caused her death. Petitioner cites to the testimony of an investigating deputy who testified that he did not have any evidence of Petitioner giving Ms. Cantwell controlled substances after the party on September 12.

The State argues that the jury was presented with evidence that Petitioner supplied Ms. Cantwell with the drugs that caused her death. The State points to the testimony of Petitioner's daughter, Ms. Kivett. The jury was informed by Ms. Kivett that the Petitioner told her that he believed he killed Ms. Cantwell by giving her too many pills. The State argues further that the jury was presented with evidence that Petitioner had a prescription for the drugs Oxycodone and Xanax. The jury was also presented with evidence that Ms. Cantwell died from an overdose of Oxycodone, and that Xanax was also found in her system. Viewing the evidence in the light most favorable to the State, with all inferences and credibility determinations also viewed in the light most favorable to the State, we believe the jury could find beyond a reasonable doubt that Petitioner committed the offense set out in Count I. *See State v. Henson*, 239 W. Va. 898, 911, 806 S.E.2d 822, 835 (2017) ("when all the evidence offered against the Petitioners is viewed in the light

40

most favorable to the State, and when all inferences and credibility determinations are also viewed in the light most favorable to the State, there was sufficient evidence to sustain the Petitioners' respective convictions in this case beyond a reasonable doubt.").

The offense set out in Count V charged the Petitioner with delivering the controlled substance Alprazolam.[35] The State presented evidence to show that Danielle Fann received this drug. Petitioner contends that the State failed to prove this charge because Ms. Fann testified that he gave her Xanax. The State correctly argues that the issue has no merit because there was expert testimony that Xanax is another name for Alprazolam.[36] We agree with the State that this issue has no merit, and that the evidence was sufficient for the jury to find beyond a reasonable doubt that Petitioner committed the offense set out in Count V. *See State v. Wasanyi*, ___ W.Va. ___, 821 S.E.2d 1, 5 (2018) ("He was also convicted of five counts of Delivery of Alprazolam (Xanax) and sentenced to one to three years in the penitentiary for each of those convictions."); *State v. McCoy*, No. 15-1142, 2016 WL 6651585, at *5 (W. Va. Nov. 10, 2016) ("petitioner's ability to deliberate, consider options, rationally reason, and think about action or future action was

---

[35] As previously mentioned, the original Count V was renamed Count IV after the original Count IV (delivery of Oxycodone) was dismissed. The Petitioner has briefed this issue using Count V as it appeared in the indictment.

[36] Further, during cross-examination of the toxicologist, Dr. Kraner, defense counsel asked the following question:

Q. The alprazolam, that's the common name for Xanax; right?

A. Yes.

impaired due to the combining exacerbating effects of alcohol and alprazolam (also known as Xanax) in his system.").

## IV.

## CONCLUSION

In view of the foregoing, we affirm the April 11, 2016, order of the circuit court sentencing the Petitioner for his convictions of first-degree murder, holding a hostage to defile, and two counts of possession of a controlled substance with intent to deliver.

Affirmed.