582 S.E.2d 774

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Artie SHREWSBURY, Defendant Below, Appellant**

**No. 30597.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided April 14, 2003.

**330**

John Earl (Jay) Williams, Jr., Princeton, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

PER CURIAM:

This is an appeal by Artie Gene Shrewsbury (hereinafter "Appellant") from a November 6, 2001, order of the Circuit Court of Mercer County sentencing him to four consecutive terms of one to five years in the penitentiary and five years probation upon his conviction of seven counts of first degree sexual assault and four counts of first degree sexual abuse. The Appellant contends that the lower court erred in admitting the testimony of the children's play therapist regarding statements made by the alleged victims of abuse. Upon thorough review of the record and the arguments of the parties, we disagree with the Appellant's contentions and affirm the lower court.

I. Factual and Procedural History

On October 11, 2000, the Appellant was indicted for seven counts of first degree sexual assault and four counts of first degree sexual abuse. The indictment alleged that, from November 1996 through November 1999, the Appellant had engaged in sexual intercourse with his step-nephews, J.C., a minor under the age of eleven years, and R.S., the younger brother of J.C.[1] The Appellant's trial was conducted on August 30 and 31, 2001. During trial, the children's mother, Debra. S., testified that she had been concerned about the behavior of the children and had consulted Southern Highlands Community Mental Health Center regarding J.C.'s behavior problems in 1997. The children's mother also admitted J.C. for an evaluation and observation at Highland Hospital in December 1997, due to violence toward his younger brother and threats of suicide. J.C. thereafter spent approximately one year living with a cousin and her husband. Upon his return to his family, the children's mother testified that she began to notice disturbing behavior in both boys, including touching one another's genitals and touching the genitals of animals. The children's mother testified that on November 10, 1999, J.C. informed her that his Uncle Artie, the Appellant, had touched him in private parts of his body. The children's mother also testified that R.S.

---

1. Consistent with this Court's practice in cases involving sensitive matters, only the initials of the victims will be used. *See State v. Edward Charles* *L.*, 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990).

admitted that the Appellant had also engaged in such contact with him.

Subsequent to this revelation, the children's mother scheduled counseling with Phyllis Hasty, a children's counselor and play therapist at Southern Highlands Community Mental Health Center. At trial, Ms. Hasty testified that she engaged in several forms of child-directed play therapy with the boys, including activities such as workbooks, drawing pictures, letter writing, painting, and hitting an "anger bop bag" to express feelings. Ms. Hasty testified that the children had talked to her about Artie touching and fondling them, as well as requests from Artie that the children also touch him. Ms. Hasty also testified that the children informed her that oral sex was involved, with J.C. offering the statement that "he didn't understand about the white stuff that comes out of Artie's thing." Ms. Hasty explained that the children had told her that they witnessed each other being abused. R.S. related an incident to Ms. Hasty in which Artie had attempted to penetrate R.S. while J.C. watched.

## II. Standard of Review

◼ A trial court's rulings on the admissibility of evidence, "including those affecting constitutional rights, are reviewed under an abuse of discretion standard." *State v. Marple,* 197 W.Va. 47, 51, 475 S.E.2d 47, 51 (1996). In syllabus point two of *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983), this Court explained: " 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk,* 171 W.Va. 639, [643,] 301 S.E.2d 596, 599 (1983)."

**2.** The Appellant fails to include any formal assertion of "assignments of error" in his petition for appeal, which also serves as his brief. Based upon this Court's reading of the Appellant's petition for appeal, we interpret the Appellant's apparent assignments of error and divide them into two essential components.

**3.** The Appellant does acknowledge that the children had disclosed the sexual abuse to their mother prior to any contact with Ms. Hasty.

## III. Discussion

The Appellant attacks the admissibility of the testimony of witness Phyllis Hasty on two grounds.[2] First, he maintains that Ms. Hasty should not have been permitted to provide information to the jury regarding comments made by the children and that such testimony violated the Appellant's right to confront his accusers. Second, the Appellant contends that Ms. Hasty should not have been permitted to testify regarding her therapy with the child victims which involved play therapy.[3]

### A. Constitutional Right To Confront Witnesses

#### 1. Unavailability Issue

◼ The Appellant asserts that the lower court improperly admitted the therapist's testimony regarding the statements of the children without first determining that the children were unavailable to testify at trial. The Appellant asserts that the trial court's admission of such statements consequently violated his constitutional right to confront his accusers.[4] In syllabus point two of *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990), this Court explained: "The two central requirements for admission of extrajudicial testimony under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution are: (1) demonstrating the unavailability of the witness to testify; and (2) proving the reliability of the witness's out-of-court statement." In syllabus point two of *State v. Kennedy,* 205 W.Va. 224, 517 S.E.2d 457 (1999), however, this Court substantially modified that holding, as follows:

We modify our holding in *James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990), to comply with the United States Supreme Court's subsequent pronounce-

**4.** The Appellant does not assign error to the admission of the mother's testimony concerning the statements of the children; nor does he assign error to the admission of the testimony of a juvenile probation officer, Ms. Kerry Buzzo, regarding the emotional distress suffered by the children upon seeing the Appellant in a parking lot at a court hearing.

ments regarding the application of its decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), to hold that the unavailability prong of the Confrontation Clause inquiry required by syllabus point one of *James Edward S.* is only invoked when the challenged extrajudicial statements were made in a prior judicial proceeding.

In *Kennedy,* this Court concluded: "Given the fact that the extrajudicial statement in this case—the autopsy report—does not involve statements given in a prior judicial proceeding, we conclude that the unavailability analysis pertinent to the Confrontation Clause inquiry under *James Edward S.* is not applicable." 205 W.Va. at 229, 517 S.E.2d at 462.

This issue of the role of unavailability in a determination of admissibility was also addressed in *State v. Pettrey,* 209 W.Va. 449, 549 S.E.2d 323 (2001), a case very similar to the one at bar. In *Pettrey,* this Court evaluated the admissibility of a play therapist's testimony regarding statements made by two young children describing sexual abuse. This Court analyzed issues similar to those raised by the Appellant in the present case and concluded that "the statements made by the children to Ms. Akers [the victim's teacher] and Ms. Hasty [the victim's therapist] were obviously not made in a prior judicial proceeding. Therefore, the unavailability analysis pertinent to the Confrontation Clause is not applicable." *Id.* at 457, 549 S.E.2d at 331.

■ Likewise, the challenged statements in the case sub judice were made to the therapist after the children had revealed the abuse to their mother. Since there is no issue regarding a statement made at a prior judicial proceeding, we concluded that the unavailability issue is not relevant, and the State was not required to establish that the children were unavailable to testify prior to introducing the testimony of the play thera-

pist regarding statements made by the children.[5]

### 2. Reliability Issue

■ The Appellant also attacks the admissibility of the statements in the present case based upon the alleged absence of reliability. As this Court recognized in syllabus point four of *State v. Mason,* 194 W.Va. 221, 460 S.E.2d 36 (1995),

"Even though the unavailability requirement has been met, the Confrontation Clause contained in the Sixth Amendment to the United States Constitution mandates the exclusion of evidence that does not bear adequate indicia of reliability. Reliability can usually be inferred where the evidence falls within a firmly rooted hearsay exception." Syllabus Point 5, *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990).

In syllabus point six of *Mason,* this Court further explained: "For purposes of the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution, no independent inquiry into reliability is required when the evidence falls within a firmly rooted hearsay exception."

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court clarified that hearsay evidence that falls under a firmly rooted exception to the hearsay rule or alternatively, when such evidence is accompanied by "particularized guarantees of trustworthiness," is admissible without any affront to the Confrontation Clause. *Id.* at 66, 100 S.Ct. 2531. Specifically, the *Roberts* Court held that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.*

■ In syllabus point four of *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990), this Court explained:

---

5. The Appellant also references West Virginia Code § 62–6B–1 to –5 (2001) (Supp.2002) and suggests that these statutory procedures could have been utilized to procure the testimony of the child witnesses through closed-circuit television. West Virginia Code § 62–6B–3 authorizes

such testimony "[u]pon a written motion filed by the prosecuting attorney, and upon findings of fact determined pursuant to subsection (b) of this section.. ." A request for implementation of this manner of procuring child testimony was not made in the present case.

The following [is] ... not excluded by the hearsay rule, even though the declarant is available as a witness: ... (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. W.Va.R.Evid. 803(4).

In syllabus point five, the *Edward Charles L.* Court continued:

> The two-part test set for admitting hearsay statements pursuant to W.Va.R.Evid. 803(4) is (1) the declarant's motive in making the statements must be consistent with the purposes of promoting treatment, and (2) the content of the statement must be such as is reasonably relied upon by a physician in treatment or diagnosis.

■ The issue of reliability and reliance upon Rule 803(4) was also raised in *Pettrey*. In that case, this Court affirmed the lower court's finding that Ms. Hasty's testimony in *Pettrey* was reliable because it fell within the medical diagnosis or treatment exception to the hearsay rule.[6] The *Pettrey* Court reviewed the *Edward Charles L.* analysis quoted above and determined that

> [t]he statements made to Ms. Hasty by the children regarding the sexual abuse were made in a therapeutic context. Her sole involvement with K.R. and D.R. was diagnosis and treatment. Also, the statements were such that they were reasonably relied upon by Ms. Hasty in her diagnosis and treatment. Ms. Hasty's testimony was properly admitted at trial.

209 W.Va. at 460, 549 S.E.2d at 334. The *Pettrey* Court concluded as follows in syllabus point nine:

> When a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist's testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive in making the statement is consistent with the purposes of promoting treatment and the content of the statement is reasonably relied upon by the therapist for treatment. The testimony is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.

■ We find no legitimate basis upon which to distinguish the circumstances of the present case from those evaluated by this Court in *Pettrey*. We consequently conclude that the statements of the children to the therapist fall within the medical diagnosis or treatment exception to the hearsay rule and thereby possess sufficient indicia of reliability to satisfy the reliability requirement of the Confrontation Clause. We affirm the decision of the lower court in this regard.

### B. Testimony of Ms. Hasty as a Play Therapist

The Appellant also appears to assert that Ms. Hasty's testimony should not have been admitted because her mechanisms for facilitating discussion with the children were based upon the concept of play therapy. The Appellant did not, however, assert a proper objection to such subject matter during trial. Although counsel for the Appellant did object

---

**6.** *See also In re Jessica C.*, 690 A.2d 1357, 1363 (R.I.1997) ("the statements to Tovar [a therapist] were helpful in determining whether Heather had been sexually abused and in assessing her treatment needs, and therefore, the testimony was properly admitted under Rule 803(4)"); *Moore v. State*, 82 S.W.3d 399, 410 n. 3 (Ct.App. Texas 2002) ("Courts have been willing to construe the exceptions to the rule against hearsay broadly to permit out-of-court statements of alleged victims of child abuse to be admitted into evidence as excited utterances, statements for purposes of medical treatment, or under the residual exception of the hearsay rule"); *Gohring*

*v. State*, 967 S.W.2d 459 (Ct.App. Texas 1998) (finding that victim's statements to drama therapist were admissible in sexual assault case under exception to hearsay rule as statements made for purposes of medical diagnosis or treatment); *Dependency of M.P.*, 76 Wash.App. 87, 882 P.2d 1180, 1184 (1994) (holding that proponent of statement made by child to doctor or therapist may utilize hearsay exception for statements for medical diagnosis or treatment and "should not have to overcome such a presumption" that young children lack ability to understand that their statements are for purpose of getting help for sickness, pain or emotional discomfort).

to two questions during Ms. Hasty's testimony which would have elicited an opinion from Ms. Hasty, neither of these objections was founded upon the grounds now asserted on appeal.[7]

■ This Court has consistently held that "[o]bjections on non-jurisdictional issues, must be made in the lower court to preserve such issues for appeal." *Loar v. Massey,* 164 W.Va. 155, 159, 261 S.E.2d 83, 86 (1979). " 'Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.' Syllabus Point 1, *State Road Commission v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964)." Syl. Pt. 3, *O'Neal v. Peake Operating Co.,* 185 W.Va. 28, 404 S.E.2d 420 (1991).

■ The necessity for precise and specific objections was acknowledged by this Court in syllabus point two of *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996), as follows: "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Rule 103 of the West Virginia Rule of Evidence is also indicative of this principle, providing in pertinent part, as follows:

(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection.—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . .

■ In the case sub judice, based upon the Appellant's failure to raise an adequate objection, the issue of whether testimony regarding statements elicited during ther-

---

7. Counsel for the Appellant was provided with adequate opportunity to advance an objection to Ms. Hasty's testimony, had he so desired. The lower court specifically inquired of defense counsel whether he intended to raise an objection to Ms. Hasty's testimony:

> THE COURT: I don't know if we need to— to do that now or at a later time, I assume you're gonna object to Ms. Hasty, just for the record?
> MR. WILLIAMS: I'm really not, Your Honor, I mean depending on maybe a— I— I read the Nichols case and I saw—
> THE COURT: Pettrey case, I think.
> MR. WILLIAMS:— yeah, I'm sorry you're right, that's right, the one you referred to, I got it here I think.
> THE COURT: Well, I just thought you wanted to make that for the record, but in any event we'll be in recess for about ten minutes.

Counsel for the Appellant did object during a line of questioning concerning the issue of whether Ms. Hasty always endorsed what children told her during therapy. When Ms. Hasty provided an answer in which she estimated the percentage of time she believes children give her unreliable information, defense counsel made the following objection:

> MR. WILLIAMS: Your Honor, I'm gonna object at this time and I'd like to come to the bar.
> THE COURT: The jury just relax a moment and we'll take up the objection.
> MR. WILLIAMS: Your Honor, in that case that we cited earlier, which came out of this County involving her—
> THE COURT: A Pettrey case.
> MR. WILLIAMS:— yeah, they set out the delineations of exactly what her limitations were and I'm willing to— to stay within those boundaries but we're getting into an area that was not set out in that— that court case. The idea was—
> THE COURT: Where she's talkin' about the percentages, and so forth?
> MR. WILLIAMS:— about other kids in play therapy, I'm talkin' about the Court goes in— she's indicated over to a play therapist for a medical diagnosis as part of their treatment plan then she could testify to what they said.
> THE COURT: Well I'm sure Ms. Garton is gonna get in the treatment idea. I— I assume she would just—
> MR. WILLIAMS: I think—
> MS. GARTON: I'm laying a foundation.
> MR. WILLIAMS:— I think making conclusions are outside her realm, I— I relied upon that— I think that case gave some leeway but not just opened it up.
> THE COURT: So exactly what are you asking the Court and what are you objecting to?
> MR. WILLIAMS: We just ought to get right to the point here, I mean let's get to the point if she saw these kids on some referral then set up some foun— there's no foundation here, how these children got over there.
> THE COURT: Well, I'm sure we can get into all that?
> MS. GARTON: Yes.
> THE COURT: And I assume you're doin' this to show the—
> MS. GARTON: It's a part of the foundation.
> THE COURT: The objection is overruled you may proceed.

apy sessions which included a component of play therapy should have been admitted at trial has not been preserved for appellate review. While the plain error doctrine has been utilized to correct errors of great magnitude even in the absence of an objection, we do not believe that the circumstances of this case warrant such a result. This Court explained the use of the plain error doctrine as follows in syllabus point seven of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995): "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." In pertinent part of syllabus point four of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), this court stated that the plain error "doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result."

We conclude that the lower court did not abuse its discretion in admitting testimony in the Appellant's trial. We consequently affirm the decision of the lower court.

Affirmed.