IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

**FILED**

**May 21, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-272

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

HEATH ALLEN ROSE,
Defendant Below, Petitioner.

Appeal from the Circuit Court of Mingo County
The Honorable Miki Thompson, Judge
Case No. 22-F-135

AFFIRMED

Submitted: January 14, 2026
Filed: May 21, 2026

Joseph H. Spano, Jr, Esq.
Pritt & Spano, PLLC
Charleston, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Lara Bissett
Assistant Attorney General
Andrea Nease, Esq.
Deputy Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

CHIEF JUSTICE BUNN concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

2.      ""'To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syllabus point 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996).' Syllabus point 10, *State v. Shrewsbury*, 213 W. Va. 327, 582 S.E.2d 774 (2003)." Syl. Pt. 1, *State v. Sites*, 241 W. Va. 430, 825 S.E.2d 758 (2019).

3.      "An error in the admission of evidence not objected to by the defendant is deemed waived by him." Syl. Pt. 10, *State v. Bragg*, 140 W. Va. 585, 87 S.E.2d 689 (1955).

WOOTON, Justice:

The petitioner, Heath Allen Rose, appeals the Circuit Court of Mingo County's February 16, 2023, sentencing order following a jury trial in which he was convicted of one count of second-degree murder and two counts of wanton endangerment. At trial the jury found that on February 17, 2022, the petitioner shot and killed Mr. Joda Browning when he saw Mr. Browning with Ms. Brittany Kennedy, a woman with whom the petitioner was involved in a romantic relationship. After our review of the parties' briefs and oral arguments, the appendix record, and the pertinent legal authority, we find no merit to the petitioner's assignments of error. We therefore affirm his convictions and the resulting sentence.

## I.     FACTS AND PROCEDURAL HISTORY

The petitioner spent the evening prior to the shooting with Ms. Kennedy at her apartment. At some point the couple discovered that Ms. Kennedy's front passenger tire was leaking air and they inflated the tire. Because he had to be at work early the next morning, between 4:30 and 5:00 a.m. Ms. Kennedy drove the petitioner to his house to get his vehicle. The petitioner later told law enforcement he was concerned that Ms. Kennedy may have continued problems with the tire, so he asked Ms. Kennedy to contact him when she arrived back at her apartment. Ms. Kennedy did not call the petitioner when she arrived

1

home, and after some time had elapsed the petitioner decided to leave work to check on her.

The petitioner drove to Ms. Kennedy's apartment and saw Ms. Kennedy's vehicle in the parking lot with Ms. Kennedy and her young daughter inside. He also saw Mr. Browning outside of Ms. Kennedy's vehicle, attempting to inflate the same tire the petitioner had recently inflated. The petitioner exchanged words with Ms. Kennedy and interacted with Mr. Browning. The investigating officer described this interaction as either a verbal or physical dispute, after which the petitioner walked hurriedly back to his own vehicle and retrieved his handgun. Meanwhile Ms. Kennedy instructed Mr. Browning to get in the car so they could leave. Mr. Browning entered the vehicle and sat in the front passenger seat. Ms. Kennedy placed the vehicle in gear and attempted to leave while the petitioner went back to his own car. The petitioner returned to Ms. Kennedy's vehicle with a firearm, put the handgun through the passenger-side window, and shot Mr. Browning in the face.

After the shooting, Mr. Browning got out of the vehicle and laid down on the ground. Video from the apartment complex showed the petitioner walking over to Mr. Browning, pausing near him, and then fleeing the scene.

2

Law enforcement quickly arrived on the scene, but Mr. Browning died prior to their arrival. Officers spoke with Ms. Kennedy and with Violet Telfer, another witness who had been in a nearby apartment at the time of the shooting. Ms. Telfer gave a recorded statement to law enforcement in which she recounted that she looked outside the front door after the shooting, saw Mr. Browning's body on the ground, and observed the petitioner standing over him. Further, Ms. Telfer told law enforcement that she heard the petitioner say something akin to "I told you I would kill you, you son of a b****," before fleeing the scene in his vehicle.

Shortly after the shooting the petitioner surrendered to the police. Once in custody, he provided a video-recorded statement to law enforcement. Initially the petitioner stated that he would like to have an attorney; however, he later indicated that he would give a statement without having an attorney present. In his recorded statement the petitioner told law enforcement that he did not mean to shoot Mr. Browning, but rather had pointed the gun in his face to scare him.

The case was presented to the grand jury, which returned an indictment charging the petitioner with one count of first-degree murder (Mr. Browning) and two counts of wanton endangerment (Ms. Kennedy and her daughter).

The record suggests that prior to trial the petitioner objected to the admission of his video-recorded statement. However, at a pretrial hearing the petitioner changed his position and stipulated that the statement was voluntarily given, without any coercion or duress. When questioned under oath by the circuit court, the petitioner stated he was not going to have his attorney attempt to suppress the statement. Thereafter, when the State sought to introduce the petitioner's video-recorded statement at trial, the court again asked the petitioner and his counsel if they wished to object to or suppress the petitioner's statement. After his counsel again confirmed that the petitioner had no objection to the statement being played, the court permitted the State to play the recorded statement for the jury.

Ms. Kennedy testified at trial as to the events surrounding the shooting. However, outside the presence of the jury and after she concluded her testimony, the circuit court expressed concern that Ms. Kennedy's words seemed slurred, and that near the end of her testimony she had closed her eyes for long periods of time. The court ordered that Ms. Kennedy submit to drug testing. While she tested positive for some illicit substances, the court declined to make a finding that she was impaired; instead, the court noted that she had recently had a child via Caesarean section and had been prescribed pain medication. Although the petitioner requested that Ms. Kennedy be required to submit to a blood test—which request was denied—the petitioner neither objected to nor moved to

4

strike Ms. Kennedy's testimony and did not seek a limiting jury instruction regarding her testimony.

Ms. Telfer, the witness who had seen the petitioner standing over Mr. Browning's body and had heard him speak after the shooting, did not appear at trial. Accordingly, the State sought to introduce Ms. Telfer's video-recorded statement. The State argued that Ms. Telfer was unavailable and sought to admit the recorded statement under several hearsay exceptions. At various points the State argued that Ms. Telfer's statement (regarding what she heard the petitioner say while standing over Mr. Browning's body) was admissible as a statement of the petitioner, a statement of a party opponent, a statement against interest, a present sense impression, an excited utterance, or a statement of a then-existing mental condition. The petitioner's arguments in response likewise focused on the West Virginia Rules of Evidence, and in particular whether Ms. Telfer was, in fact, "unavailable" for purposes of the hearsay exceptions.[1] Based on the arguments of counsel, the circuit court found that Ms. Telfer was unavailable to testify under Rule 804(a)(5) and admitted her recorded statement as a "statement against interest" under Rule 804(b)(3).

---

[1] As part of his hearsay arguments, the petitioner tangentially referenced that the State should not be allowed to play the statement because he was precluded from cross-examining the witness under the Confrontation Clause. However, he did not develop this constitutional argument before the court. Significant for our review, the court's ruling did not address the Confrontation Clause.

The petitioner was ultimately convicted of one count of second-degree murder and two counts of wanton endangerment. The circuit court denied his motion for a new trial and sentenced him to forty years on the murder conviction, five years on one of the wanton endangerment convictions, and ten days on the second wanton endangerment conviction, with the sentences for the wanton endangerment convictions to run concurrently to each other and consecutive to the sentence for the murder conviction.

## II.    STANDARD OF REVIEW

Our general standard of review is highly deferential:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). With this in mind, we proceed to the parties' arguments.

## III.    DISCUSSION

6

On appeal the petitioner argues that the circuit court erred when it: (1) failed to suppress his statement to police at trial; (2) failed to strike or provide a limiting instruction related to Ms. Kennedy, who was under the influence when she testified; (3) allowed the statement of Ms. Telfer to be played for the jury in violation of the confrontation clauses of the federal and state constitutions; and (4) allowed the assistant prosecuting attorney to participate in the petitioner's trial despite his conflict of interest.

Initially, the petitioner contends that the circuit court erred at trial when it failed to suppress his statement to law enforcement. This argument is undermined by the record which reveals that during the pretrial proceedings both the petitioner and his counsel assured the court that the petitioner had no objection to the admission of the statement. At trial, the petitioner's counsel reaffirmed this position.

It is well-settled that this Court applies a "raise or waive" rule: an objection must be raised before the trial court to preserve an assignment of error or that error is waived. Simply stated,

> [o]ur general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal.
>
> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is

7

also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

*Whitlow v. Bd. of Educ. of Kanawha Cnty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) (citations omitted).

"'"To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syllabus point 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996).' Syllabus point 10, *State v. Shrewsbury*, 213 W. Va. 327, 582 S.E.2d 774 (2003)." Syl. Pt. 1, *State v. Sites*, 241 W. Va. 430, 825 S.E.2d 758 (2019). Moreover, "[a]n error in the admission of evidence not objected to by the defendant is deemed waived by him." Syl. Pt. 10, *State v. Bragg*, 140 W. Va. 585, 87 S.E.2d 689 (1955). Simply put, "'[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." *State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995) (quoting *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994) (en banc)). Moreover, "West Virginia has always treated a failure to object to trial errors as a default of any right to assert these errors on direct appeal or in habeas review." *State v. Marple*, 197 W. Va. 47, 51, 475 S.E.2d 47, 51 (1996) (quoting *Meadows v. Holland*, 831 F.2d 493, 498 (4th Cir. 1987)).

In *State v. LaRock*, 196 W. Va. 294, 315-17, 470 S.E.2d 613, 634-36 (1996), this Court explained that the raise or waive rule is designed to prevent a party from taking one position below and a different one on appeal, for reasons grounded both in law and logic. "It prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)." *LaRock*, 196 W. Va. at 316, 470 S.E.2d at 635.

Here the circuit court gave the petitioner ample opportunity, both at a pretrial hearing and then again at trial, to argue that his custodial statement should be suppressed. Nevertheless, the petitioner expressly and unequivocally declined to do so. Instead, he affirmatively stipulated to its voluntariness and its admissibility, thus making a tactical decision to allow the statement to be played for the jury. For this reason, we find that this assignment of error has been waived, and we decline to entertain the issue on appeal.

Next, the petitioner argues that the circuit court erred by not striking or issuing a special jury instruction regarding the testimony of Ms. Kennedy, one of the petitioner's victims, because she tested positive for illicit substances after completing her trial testimony. As set forth *supra*, the court ordered that Ms. Kennedy be drug tested after noting that her voice was slurred and that she closed her eyes for long periods of time near the conclusion of her testimony. Although Ms. Kennedy tested positive for illicit

substances, the court declined to make a finding that she was impaired or to inform the jury of her positive drug screen.

Once again, this issue was not appropriately preserved for appeal. While Ms. Kennedy was testifying, during cross-examination defense counsel elected not to question her regarding her demeanor, and evidenced no awareness that there might be a problem; rather, it was the court that sua sponte expressed concern and asked for the drug test after the conclusion of the witness's testimony. After Ms. Kennedy's drug screen came back positive the petitioner did ask for a blood test, but the record does not reflect that he sought to strike the witness's testimony, or that he sought a limiting instruction be given regarding her testimony.

We note, however, that even assuming this assignment of error had been preserved, the petitioner's argument would be unavailing. Rule 601 of the West Virginia Rules of Evidence states that "every person is competent to be a witness except as otherwise provided by these Rules." In *State v. Merritt*, 183 W. Va. 601, 608, 396 S.E.2d 871, 878 (1990), this Court stated that "[t]he only grounds for disqualifying a party as a witness are that the witness does not have knowledge of the matters about which he is to testify, that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully." We also recognized that "every witness is presumed to be competent, and neither feeblemindedness nor insanity renders a witness incompetent or disqualified."

10

*Id.* Defense counsel failed to object, consistent with *Merritt*, that Ms. Kennedy lacked knowledge of the matters about which she testified, that she did not have the capacity to recall, that she did not understand the duty to testify truthfully, or that she was otherwise unable to respond to counsel's questioning at trial. To the contrary, Ms. Kennedy's testimony was consistent with the video from the apartment complex that was presented to the jury. Most importantly, the petitioner cross-examined Ms. Kennedy, and the jury was able to assess Ms. Kennedy's demeanor and to give her entire testimony the weight they felt it deserved.

Next, the petitioner alleges that the circuit court improperly admitted the recorded statement of Ms. Telfer, the witness who saw the petitioner standing over Mr. Browning and heard his last statement before leaving the scene. On appeal, the petitioner contends that admission of this statement violated the Confrontation Clause contained in both the Sixth Amendment to the United States Constitution and Article III Section 14 of the West Virginia Constitution. The State argues that the witness's statement was not testimonial and therefore did not implicate the Confrontation Clause. *See State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006) (holding that the Confrontation Clauses contained within the Sixth Amendment to the United States Constitution and within Article III Section 14 of the West Virginia Constitution bar the admission of testimonial statements

11

made by a witness who does not appear at trial). *See also Crawford v. Washington*, 541

U.S. 36 (2004) (same).[2]


Although the petitioner argues on appeal that the circuit court violated his

constitutional rights protected by the Confrontation Clause of the United States and West

Virginia Constitutions, this Court's appellate review is constrained by the record developed

---

[2] According to *Crawford* and *Mechling*, "only 'testimonial statements' cause the declarant to be a 'witness' subject to the constraints of the Confrontation Clause. *Non-testimonial statements by an unavailable declarant, on the other hand, are not precluded from use by the Confrontation Clause.*" *State v. Kaufman*, 227 W. Va. 537, 711 S.E.2d 607 (2011) (*citing Mechling*, 219 W. Va. at 373, 633 S.E.2d at 318 (emphasis added)). Because the Confrontation Clause is implicated only when a statement is *testimonial*, the *Mechling* court addressed what constituted a testimonial versus a nontestimonial statement.

> Under the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution,* a witness's statement taken by a law enforcement officer in the course of an interrogation is testimonial when the circumstances objectively indicate that there is no ongoing emergency, and that the primary purpose of the witness's statement is to establish or prove past events potentially relevant to later criminal prosecution. A witness's statement taken by a law enforcement officer in the course of an interrogation is non-testimonial when made under circumstances objectively indicating that the primary purpose of the statement is to enable police assistance to meet an ongoing emergency.

Syl. Pt. 9, *Mechling*, 219 W. Va. at 366, 633 S.E.2d at 311. Per the Supreme Court of the United States, when determining what constitutes a testimonial statement, "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (citations omitted).

before the circuit court. *See State v. Campbell*, 246 W. Va. 230, 240, 868 S.E.2d 444, 454 (2022) ("In determining whether the circuit court erred in declining to suppress [the defendant's] recorded interview, we are constrained to consider only arguments and evidence that were before the circuit court at that time."). Upon our review, we find the issue was not appropriately preserved. At trial, the circuit court and the parties vigorously discussed whether Ms. Telfer's statement was inadmissible hearsay. During that hearsay discussion, the petitioner's counsel disputed whether Ms. Telfer was actually unavailable, and noted, but only in passing, that admission of the statement would preclude him from cross-examining Ms. Telfer "under the [C]onfrontation [C]lause[.]"The petitioner proceeded to argue only that Ms. Telfer's statement was inadmissible hearsay and failed to advance any constitutional argument related to a potential violation of the Confrontation Clause, including how or why this constitutional principle was applicable. Importantly, the petitioner failed to even attempt to argue that the statement was testimonial, a necessary predicate to implicate the Confrontation Clause.[3] Accordingly, the court proceeded to rule only on hearsay grounds, determined that the witness was unavailable pursuant to Rule

---

[3] Consistent with his objection at trial, in his argument for a new trial the petitioner argued solely that Ms. Telfer was not truly unavailable for hearsay purposes and thus her statement was inadmissible hearsay pursuant to the West Virginia Rules of Evidence. Likewise, during that argument the petitioner failed to advance any substantive argument that Ms. Telfer's statement was testimonial, a necessary prerequisite to implicate the Confrontation Clause.

804(a)(5) of the West Virginia Rules of Evidence,[4] and ruled that her testimony was admissible pursuant to a hearsay exception.

As noted above, the petitioner's argument to the circuit court was focused on this Court's established hearsay rules. However, "'[t]here is a distinct difference' between a confrontation clause objection and an objection based on hearsay. One does not preserve the other." *Francois v. State*, 711 S.E.2d 45, 47 (Ga. Ct. App. 2011) (citations omitted). The petitioner made no argument to the circuit court that Ms. Telfer's statement was a testimonial statement in violation of the Confrontation Clause, the record demonstrates no factual development of the issue, and the petitioner failed to secure a ruling from the court regarding the Confrontation Clause.[5] Not having properly preserved the issue below, the

---

[4] Rule 804(a)(5) of the West Virginia Rules of Evidence provides instances when the declarant of a statement may be considered "unavailable as a witness," and includes instances when the declarant "is absent from the trial or hearing, and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance or testimony[.]" Before the circuit court, the State claimed that Ms. Telfer was unavailable because it had been unable to reach her despite its repeated attempts to contact her in the weeks leading up to trial, either at her prior address or phone number. The petitioner, however, contended below that the State had adequate time to issue a subpoena to obtain Ms. Telfer's presence at trial and the State's efforts were insufficient. On appeal, the petitioner again conflates hearsay unavailability with Confrontation Clause unavailability. *Compare* W. Va. R. Evid. 804(a) (setting forth criteria for unavailability) *with Ohio v. Roberts*, 448 U.S. 56, 74 (1980) (providing that a witness is not unavailable for purposes of the Confrontation Clause "unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial" (quoting *Barber v. Page*, 390 U.S. 719, 724-25 (1968)), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2005).

[5] Indeed, the petitioner even failed to advance a meaningful argument in support of this assignment of error in his initial brief to this Court, as he failed to argue that

14

petitioner may not advance the Confrontation Clause argument for the first time on appeal. *See Sites*, 241 W. Va. at 438-39, 825 S.E.2d at 766-67 (concluding that the petitioner's failure to raise a Confrontation Clause objection precluded this Court from addressing the issue); *State v. Shingleton*, 237 W. Va. 669, 684, 790 S.E.2d 505, 520 (2016) (abrogated by statute on other grounds). Thus, we decline to reach the merits of the petitioner's constitutional argument and will not disturb the circuit court's decision allowing the statement to be played for the jury. *See State v. Whittaker*, 221 W. Va. 117, 128, 650 S.E.2d 216, 227 (2007) (observing that trial courts are accorded "broad discretion" in determining whether to admit evidence).

The petitioner also argues that the circuit court erred by allowing Assistant Prosecuting Attorney Josh Ferrell to represent the State at the petitioner's trial, as Mr. Ferrell had previously represented the petitioner in a civil matter stemming from a motor vehicle accident. Contrary to the petitioner's appellate claim that this issue was not addressed at trial, we find it was expressly raised and waived during voir dire. Mr. Ferrell's representation of the petitioner during the civil matter was dissimilar to this criminal action and the parties agreed during voir dire that Mr. Ferrell's participation in the petitioner's

---

Ms. Telfer's statement was testimonial or the context which caused it to be testimonial. In his reply brief the petitioner argues for the first time that the statement was testimonial and violative of the Confrontation Clause. Even then, his characterization that the statement was "testimonial" because it was adverse to the petitioner's interests is unavailing. This belated argument falls woefully short of preserving this issue for appellate review.

15

criminal trial did not present a problem. Accordingly, the court did not rule on this issue. Further, it is obvious to this Court that there was no disqualifying conflict as Mr. Ferrell's involvement in the case did not violate the West Virginia Rules of Professional Conduct. Rule 1.9 of the West Virginia Rules of Professional Conduct states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Here, the petitioner fails to argue that Mr. Ferrell previously represented him in the same or a substantially related matter. Accordingly, we find no error.

## IV. CONCLUSION

For the reasons stated above, we affirm the Circuit Court of Mingo County's February 16, 2023, order sentencing the petitioner for his convictions of second-degree murder and two counts of wanton endangerment.

Affirmed.